UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| SHYHEEM LEE SMITH, ) | |
| ) | |
| Plaintiff, ) | Civil No. 10- 246-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| D. L. STINE, WARDEN, et al., ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Shyheem Lee Smith, formerly incarcerated in the United States Penitentiary- McCreary ("USP-McCreary") in Manchester, Kentucky, but presently incarcerated in the Federal Correctional Institution at Edgefield, South Carolina ("FCI-Edgefield") has submitted the instant *pro se* civil rights Complaint under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and he has been granted pauper status. Because Smith has been granted *in forma pauperis* status and is asserting claims against government officials, the Court must screen his Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these sections require a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief.[1] *Id*.; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

---

[1] A *pro se* pleading is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

1

For the reasons set forth below, the Court will dismiss a portion of Smith's claims, transfer Smith's claims asserted against the FCI-Edgefield Defendants, and allow the remainder of the claims to proceed.

## I.

Smtih alleges that the defendants[1] have been deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under the U.S. Constitution. He seeks compensatory and punitive damages of not less than $1,000,000.00, the appointment of counsel, and any and all other appropriate relief.

Smith alleges that in June of 2008, he slipped and fell in the shower at USP-McCreary due to "unsafe and slippery tile" and a lack of safety mats, both inside and outside of the shower, that could prevent one from slipping and falling on the wet tile. Smith claims that as a result of this fall, he injured his left knee and that the next morning, he went to sick call concerning his knee injury and was seen by Nurse Practitioner K. Baker, but that the treatment he received at this sick call visit was unsatisfactory.

Smith further states that he continued to have pain in his left knee and that about two weeks after Nurse Practitioner K. Baker's examination and assessment of his knee injury and pain, he contacted L. Gregorey, the Health Care Administrator at USP-McCreary. Smith relayed his concern over the treatment he had received from Baker, advised L. Gregorey of the knee situation and the daily pain he was still experiencing, and requested that L. Gregorey assign someone to treat him other than Baker, due to her refusal to properly treat his knee injury. Smith

---

[1] The named Defendants are (1) D. L. Stine, Warden, FCI-McCreary; (2) M. M. Mitchell, Warden, FCI-Edgefield; (3) L. Gregorey, Health Care Administrator, USP-McCreary; (4) K. Baker, Nurse Practitioner, USP-McCreary; (5) L. Rosario, Health Care Administrator, FCI-Edgefield; and (6) L. Blocker, Health Care Administrator, FCI-Edgefield. Plaintiff specifies that

2

states that Gregorey denied that request. Undeterred, Smith persisted in his efforts to obtain an x-ray of his left knee, and that after arguing with Baker and Gregorey for about three months, and after filing a complaint with the Joint Commission, he obtained an x-ray of his left knee; it showed no abnormality. Since the x-ray was normal, Smith received no further treatment for his left knee condition.

Subsequently, Smith states that in April of 2009, he was transferred temporarily to Columbia, South Carolina, for a court appearance in his criminal case there,[2] where he was housed in the Lexington County Detention Center. While there, in May of 2009, Dr. William L. Miles examined his left knee condition and advised him that something was torn in his left knee and that an MRI test should be done to determine the type of tear he had experienced. Smith further states that Dr. Miles informed him that surgery would be required to repair the condition and that if left untreated, there would be further damage to his knee. Dr. Miles ordered an x-ray of his left knee, which revealed a prominent bone spur and arthritis in the left knee. Smith states that Dr. Miles prescribed some medication for pain and for the arthritic condition of his left knee.

Post-resentencing in his criminal case in Columbia, South Carolina, Smith was returned to USP-McCreary. He states that upon his return to USP-McCreary, medical staff there refused to continue dispensing to him the medication that Dr. Miles in South Carolina had prescribed for the arthritis and pain in the left knee, telling him that he did not need it. Smith further states that he relayed Dr. Miles' assessment of his left knee problem to the medical staff at USP-McCreary,

---

all defendants are being sued in both their individual and official capacities.
[2] On September 11, 2007, Smith was convicted in the District of South Carolina for violations of 18 U.S.C. §§ 922, 924(a)(2) and (e), and received a 188-month sentence of imprisonment. *See United States v. Shyheem Lee Smith,* No. 3:06-cr-1126-CMC. On appeal, the Fourth Circuit Court of Appeals remanded this case to the District Court for re-sentencing. On May 28, 2009,

pointing out that Dr. Miles recommended an MRI on his left knee, but that Health Administrator L. Gregorey would not approve the administration of an MRI.

Smith, in his original Complaint, states that in October of 2009, he was transferred to FCI-Edgefield in Columbia, South Carolina, where he is presently confined. Once there, Smith was seen and examined by R. Blocker, FCI-Edgefield prison physician. Smith described to Dr. Blocker the knee injury and Dr. Miles' diagnosis of his left knee injury. He then requested an MRI for his left knee, asked for a knee brace for him to support his leg, and that hebe given the medication that was prescribed for him by Dr. Miles. Smith states that none of his requests were met by medical staff at FCI-Edgefield.

However, in May of 2011, Smith was examined by Dr. Douglas E. Holford, a Consultant Orthopedist, who diagnosed Smith's left knee injury as an "ACL tear." Dr. Holford recommended an MRI and then ACL reconstructive surgery. [*See* R. 8 at Ex. 1]. Dr. Holford's diagnosis is consistent with Dr. Miles' assessment from his examination of Smith on April 30, 2009. [*See* R. 8 at Ex. 2].

## II.

To state a claim that is cognizable as a *Bivens* action under 28 U.S.C. § 1331, a plaintiff must plead and prove two essential elements. He must show, first, the deprivation of a right secured by the Constitution or laws of the United States and, second, that the Defendants allegedly depriving him of those rights acted under color of federal law. *Id*. at 397. Smith has made the requisite showing concerning a deprivation. "Failure to provide medical care may rise to the level of a violation of the Cruel and Unusual Punishments Clause of the Eighth

---

Smith was re-sentenced to an 84-month sentence, and was returned to USP-McCreary post-sentencing.

Amendment." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). With respect to the second element, it is fairly plain that each defendant was acting under color of federal law as they were administrating health care to Smith while he was imprisoned and at the behest of the federal government. Therefore, Smith has properly alleged both elements with regard to all named defendants.

One issue raised in Smith's factual allegations recounted above relates to the administrative remedies which he has pursued and exhausted within the BOP. Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner seeking compensation from government employees through the courts must first exhaust whatever administrative remedies are available to the prisoner.

On September 25, 2008, Smith began pursuing his administrative remedies concerning the medical care he had received and was receiving at USP-McCreary relative to his injured left knee while he was an inmate there. *See* Administrative Remedy No. 510628-F1 and Administrative Remedy Appeal Nos. 510628-R1 and 510628-A1. This administrative remedy was exhausted on April 22, 2009. [*See* R. 2].

Because Smith exhausted his administrative remedy concerning the medical care he received at USP-McCreary for his injured left knee, the Court concludes that his *Bivens* claim should go forward at this juncture and that the named USP-McCreary Defendants should be required to respond to Smith's Complaint. Consequently, the Court will direct the issuance of summons to the USP-McCreary Defendants to respond to the allegations in Smith's Complaint. At the same time, however, Smith's claims against some of the federal employees named as *Bivens* defendants cannot go forward and will be dismissed for the reasons stated below.

**A.**

The named USP-McCreary defendants are D.L. Stine, Warden, L. Gregorey, Health Care Administrator, and K. Baker, Nurse Practitioner. Smith asserts claims against each of these named defendants in both their individual and official capacities. When damages are sought against federal employees in their official capacities, the damages are essentially sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983) (discussion of sovereign immunity). Therefore, the official capacity claims for damages from the named USP-McCreary defendants in this case will be dismissed, and only the claims for damages from these defendants in their individual capacities will proceed.

**B.**

The named FCI-Edgefield defendants are M. M. Mitchell, Warden, L. Rosario, Health Care Administrator, and L. Blocker, Health Care Administrator.

Having fully screened Smith's original Complaint and Supplemental Complaint, the Court must conclude that he has improperly joined the named FCI-Edgefield defendants to this action. As a result those claims against should be severed and transferred to the District of South Carolina for further disposition.

Proper venue in civil rights claims is governed by the general venue statute, 28 U.S.C. § 1391. Section 1391(e) provides a special venue provision for any action in which at least one of the defendants is an officer or employee of the United States or its agencies acting in his or her official capacity or under color of legal authority. *See* 28 U.S.C. § 1391(e). But even where venue is proper, 28 U.S.C. § 1404(a) permits a district court to transfer a case to another district

where it might have been brought when doing so would serve the convenience of the parties or the interests of justice. "[A]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' makes a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir.) (Ryan, Gibbons, Sutton ), *reh'g denied*, 583 F.3d 955 (6th Cir. 2009).

In determining what would serve the convenience of the parties or the interests of justice, a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns "such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir.1991) (*citing Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 30 (1988)).

In this case, all of Smith's constitutional claims against the FCI-Edgefield Defendants arose in Edgefield, South Carolina, which is located in the judicial district of the United States District Court for the District of South Carolina. Potential witnesses presumably reside or could be located in that district and relevant documents, if any, are presumably located in the District of South Carolina. To the extent that Smith asserts claims against the FCI-Edgefield Defendants in their individual capacities, allowing this action to proceed in this Court based solely upon venue considerations set forth in 28 U.S.C. § 1391(e) becomes even less attractive. If this action remains in this district, the FCI-Edgefield Defendants would most likely argue with good reason that any individual capacity claims against them should be dismissed for lack of *in personam* jurisdiction.

A defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. *International Shoe*

7

*Co. v. Washington*, 326 U.S. 310, 316-19 (1945).  In order to establish minimum contacts, a plaintiff must show that the defendant should reasonably anticipate being hauled into court in the forum state, because he purposefully availed himself of the privilege of conducting activities there.  *Id.*; *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968).  Stated another way, "the relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'"  *Theunissen v. Matthews*, 935 F.2d 1454, 1459-50 (6th Cir. 1991) (citations omitted).

None of the South Carolina-domiciled FCI-Edgefield Defendants have the requisite minimum contacts with the Commonwealth of Kentucky so that exercising personal jurisdiction over them would be constitutionally permissible.  Presumably, Smith filed this action in this district  because his left knee injury occurred while he was an inmate at USP-McCreary; however, when Smith filed his complaint in August of 2010, he was an inmate at FCI-Edgefield, having been transferred there in October of 2009.  Thus, none of the FCI-Edgefield Defendants could have reasonably foreseen or anticipated that they could be hauled into a federal court in Kentucky based on their alleged actions in respect to the medical care they provided to Smith in South Carolina.  To the extent that Smith asserts individual capacity claims against the FCI-Edgefield Defendants about events alleged to have occurred in South Carolina, the federal court in the District of South Carolina is in a much better position to assess those claims and determine whether any South Carolina state law is applicable thereto.  *See Abdur-Rahim v. Doe*, No. 7:08-CV-00224-ART, 2009 WL 678348 at *3, (E.D. Ky. March 11, 2009) (transferring venue of prisoner's civil rights claims, which accrued in New Jersey, to the federal court in that state under 28 U.S.C. § 1404(a), for the convenience of the parties and the interests of justice).

8

In this case, only the transfer of Smith's claims against the FCI-Edgefield Defendants to the District of South Carolina is warranted, not a transfer of the entire action which § 1404 authorizes. Under such circumstances, Federal Rule of Civil Procedure 21 permits severance of claims against parties who have been improperly joined. Rule 21 provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21. "The manner in which a trial court handles misjoinder lies within that court's sound discretion." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988). "Rule 21 gives the court discretion to make three types of orders. The court may add parties, drop (dismiss) parties, and may sever '[a]ny claim against a party.'" 4-21 *Moore's Federal Practice-Civil* § 21.02 (internal quotation omitted). "Severance under Rule 21 results in separate actions." *Id*. at § 21.06. "As with any case in federal court, [the severed action] may be transferred under appropriate circumstances . . . . Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id*.

Accordingly, the Court will sever Smith's claims against the FCI-Edgefield Defendants. Those claims will be transferred to the District of South Carolina for further disposition.

As Smith has been granted pauper status, an officer of the court will serve process on his behalf pursuant to Fed. R. Civ. P. 4(c)(2) and 28 U.S.C. § 1915(d). The Clerk's Office and the Office of the United States Marshal ("USM Office"), therefore, will be directed to serve the summons and complaint and supplemental complaint, as set forth below.

### III.

Accordingly, it is **ORDERED** as follows:

9

1. Pursuant to Federal Rule of Civil Procedure 21, Smith's constitutional claims against the FCI-Edgefield Defendants (M. M. Mitchell, Warden, FCI-Edgefield; L. Rosario, Health Care Administrator, FCI-Edgefield; and L. Blocker, Health Care Administrator, FCI-Edgefield) set forth in Smith's Complaint [R. 2] and Supplemental Complaint [R. 8] are **SEVERED** from this action and **TRANSFERRED** to the United States District Court for the District of South Carolina for all further disposition;

2. Smith's constitutional claims against the USP-McCreary Defendants (D. L. Stine, Warden, FCI-McCreary; L. Gregorey, Health Care Administrator, USP-McCreary; and K. Baker, Nurse Practitioner, USP-McCreary) in their *official* capacities are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted;

3. The Clerk of the Court shall prepare the documents necessary for service of process upon the named USP-McCreary defendants, *in their individual capacities*:

    a. Warden D. L. Stine;
    b. L. Gregorey, Health Care Administrator; and,
    c. K. Baker, Nurse Practitioner.

3. The Clerk of the Court shall prepare a "Service Packet" consisting of the following documents for service of process upon the United States of America:

    a. a completed summons form;
    b. the Complaint [R. 2] and Supplemental Complaint [R. 8];
    c. this order; and
    d. a completed USM Form 285.

4. Additionally, the Clerk of the Court shall make three sets of copies of the above-described documents, each set containing the following:

    a. copies of all completed summons forms issued for the defendants;
    b. copies of all completed USM Forms 285;
    c. one copy of the Complaint and all attachments [R. 2];

    d.  one copy of the Supplemental Complaint and all attachments [R. 8]; and
    e.  one copy of this Order.

  5.  The Clerk of the Court shall present the Service Packet(s) and copies to the USM Office in London, Kentucky.

  6.  Service of Process upon Defendants Warden D. L. Stine; L. Gregorey, Health Care Administrator; and, K. Baker, Nurse Practitioner shall be conducted by the USM Office in London, Kentucky, by serving a Service Packet *personally* upon each of them, through arrangement with the Federal Bureau of Prisons.

  The USM Office is responsible for ensuring that each defendant is successfully served with process. In the event that an attempt at service upon a defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

  7.  The USM Office must complete service on the named defendants by serving the copies described in above paragraph 4 *by certified or registered mail* to:

    a.  one set of the copies to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;
    b.  one set to the Office of the Attorney General of the United States in Washington, D.C.; and
    c.  one set to the Office of the Federal Bureau of Prisons in Washington, D.C.

  8.  The plaintiff **SHALL**:

    a.  Immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

    b.  Communicate with the court *solely* through notices or motions filed with the Clerk's Office. **The court will disregard correspondence sent directly to the judge's chambers.**

    c.  In every notice, motion, or paper filed with the court, certify in writing that he or she has mailed a copy to every defendant (or his or her attorney) and state the date of

mailing.  **The court will disregard any notice or motion which does not include this certification.**

This, the 31st of May, 2012.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge